[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by Francis R. Caplan Co. ("Caplan"), an insurance agency, against Inplant Food Services, Inc. ("Inplant"), a Connecticut corporation, and Abraham Glassman ("Glassman"), Inplant's president, to recover premiums due for various insurance policies issued by Caplan to Inplant. The action was originally brought against Inplant only. Glassman was joined as a defendant on September 7, 1988, pursuant to an CT Page 6196 amended complaint dated August 9, 1988. The complaint was again amended on December 9, 1988. That complaint alleged that Glassman orally promised to pay all bills incurred by Inplant. Glassman's answer and special defenses alleged that the plaintiff's claim against Glassman is barred by the Statute of Frauds, Conn. Gen. Stats. 52-550 (a) and the Statute of Limitations, Conn. Gen. Stats. 52-576.
After a trial of the action, the court finds the following facts. In the late 1950's Caplan commenced providing insurance to Glassman and to various corporations of which Glassman was a principal. Glassman's corporations were generally delinquent in their payments due to Caplan. Periodically Caplan and Glassman discussed the delinquencies. During these discussions Glassman would generally tell Caplan, "I'll see that you are paid."
In 1981 Inplant was incorporated by Glassman and Richard Sarnoff, with each of those individuals owning fifty percent of the stock of Inplant. Inplant was generally delinquent in its payments due to Caplan. On various occasions Francis Caplan discussed the delinquencies with Glassman. During those discussions Glassman generally told Caplan, "I'll take care of it [the debt]" or "We'll take care of it." After the discussions, Glassman generally spoke to Richard Sarnoff concerning the need to make a payment to Caplan. Thereafter, a partial payment was generally made by Inplant to Caplan, on account of the outstanding balance due.
Caplan sent all bills for premiums due from Inplant to the business office of Inplant. No such bills were sent to Glassman's residence. During the period in which Caplan provided insurance to Inplant it also provided personal insurance to Glassman. Invoices for such personal insurance were sent to Glassman's residence and Glassman made payments for those invoices. Glassman never paid for any amounts owed by Inplant.
Glassman testified that he never represented to Caplan any intention to become personally liable for amounts owed by Inplant. When he told Caplan he would "take care of" amounts owed by Inplant, he meant that he would see that Inplant made payment.
In 1985 Changing Seasons, a restaurant in which Glassman and Richard Sarnoff each had a fifty percent interest, went out of business, owing approximately $6,000.00 to Caplan. Glassman personally paid that amount to Caplan. Francis Caplan testified that this payment reinforced his belief that Glassman intended to assume personal liability for the debts of Inplant. Caplan introduced various insurance policies for umbrella CT Page 6197 coverage, automobile, workers' compensation, liability, casualty and fire insurance. Those policies covered various periods, the earliest commencing July 20, 1982 and the latest terminating July 20, 1986. After applying applicable credits and payments, the amount of $26,078.00 remained due to Caplan from Inplant.
Under 52-550 (a)(2) of the Connecticut General Statutes, the Statute of Frauds, a promise to answer for the "debt, default or miscarriage of another must be in writing in order to be enforceable."
The plaintiff claims that its full performance by providing insurance policies to Inplant, completely takes the alleged contract between it and Glassman out of the Statute of Frauds. The doctrine of past performance has been used to take a contract out of 52-550 (a)(4) (agreement for the sale of real estate) Ubysz v. DiPietro, 185 Conn. 47, 440 A.2d 830 (1981); Breen v. Phelps, 186 Conn. 86; 439 A.2d 1066 (1982) and52-550 (a)(5) (an agreement not to be performed within one year); Dunham v. Dunham, 204 Conn. 303, 528 A.2d 1123 (1987). Under those sections of the Statute of Frauds the existence of the contract is at issue. The doctrine of past performance allows the court to find that a contract exists based on conduct, such as substantial improvements to real estate, which is referable to and consistent with the alleged oral agreement. See, Dunham v. Dunham, supra at 314.
In this case, as in all cases under 52-550 (a)(2), the existence of the underlying contract is not at issue. Thus, the doctrine of past performance has no application here. Moreover, even if the doctrine were applied, Caplan's conduct in supplying insurance to Inplant would be insufficient to take the alleged guaranty contract by Glassman out of the Statute of Frauds. Such conduct was not clearly referable and consistent with the alleged guarantee agreement, rather, it merely evidenced an agreement for purchase and sale of insurance policies between Inplant and Caplan.
The complaint of December 9, 1988 alleges that Glassman orally agreed to pay all bills incurred by Inplant whether or not Inplant defaulted in payment. Thus, it claims that Glassman's agreement was a so-called original undertaking, rather than a collateral undertaking to guaranty the debts of Inplant. An oral original undertaking is enforceable as an exception to 52-550 (a)(2). Otto Contracting Co., Inc. v. Schinella and Son, Inc., 179 Conn. 704, 427 A.2d 856, 858
(1980); Bartolotta v. Calvo, 112 Conn. 385, 389, 152 A. 306
(1930). "Fundamentally, the distinction between a contract which falls within the condemnation of the Statute of Frauds and one which does not is that the former is a collateral CT Page 6198 undertaking to answer in case of a default on the part of the obligor in the contract, upon whom still rests the primary liability to perform, whereas in the latter the obligation assumed is a primary one that the contact shall be performed." Bartolotta, 112 Conn. at 389.
In cases in which the court has found that the guarantor entered into an original undertaking, there has been evidence that the plaintiff refused to enter into the contract absent the agreement of the guarantor and that the plaintiff relied on the credit or financial strength of the guarantor as an inducement to enter into the contract. Otto Contracting Co., Inc. v. S. Schinella Son, Inc., supra at 711; Equipment Distributors, v. Adam, 33 Conn. Sup. 528, 529, 358 A.2d 367 (App. Sess. Sup. Ct. 1976). In this case, Glassman's representations to Caplan concerning payment all took place after a delinquency had arisen. There was no evidence that Caplan initially rejected the credit of Inplant. Moreover, there was no evidence that Caplan sent invoices to Glassman or that any payments were made by Glassman for debts owed by Inplant. Such payments and invoices were considered by the courts in Otto Contracting Co., Inc., supra and Equipment Distributors, Inc., supra, as evidence of an original undertaking.
If Glassman's personal payment to Caplan for the Changing Seasons Restaurant indebtedness had occurred prior to the commencement of the relationship between Caplan and Inplant, it might constitute evidence to support Caplan's reliance on Glassman's credit. However, that payment occurred during the fourth year of a five year relationship between the two parties.
The representations by Glassman that "I'll see that you are paid, or "I'll take care of it" are similar to representations made by the defendants in Mazzotta v. Gora, 19 Conn. Sup. 96,110 A.2d 295 (1954). In that case the court held that a defendant's statement to the plaintiff that "I'll see that you will get your money" did not constitute an agreement to become primarily liable for the debts of another. Similarly, the aforementioned representations by Glassman did not constitute an original undertaking. They constituted an agreement to guaranty payment of the debts of Inplant if Inplant did not pay. Such an agreement is not enforceable unless it is in writing under52-550 (a)(2).
Francis Caplan acted out of a good faith trust in a long standing business relationship when he relief on Abraham Glassman's word that he would answer for the debts of Inplant Food Services, Inc. Unfortunately, under the Statute of Frauds, Glassman's word alone, absent a writing, is not sufficient to render him liable for the debts of Inplant. CT Page 6199
For the reasons set above, judgment may enter for the defendant Abraham Glassman.
Aurigemma, J.