[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Background
In her Revised Complaint, the plaintiff alleged in the First Count that the defendant orally promised her that he would personally guarantee that her $25,000 loan to Shea Chevrolet, Co., a corporation, would be repaid promptly. She further alleged that she advanced the money in reliance on the promise of the defendant, whom she believed to have adequate means of repayment. It has been admitted that the plaintiff has not been paid the $25,000.
In the Second Count, the plaintiff alleged that the defendant was unjustly enriched to the detriment of the plaintiff.
The defendant denied that he guaranteed or promised to be personally liable for the loan and further denied that he has been unjustly enriched. He has alleged as a Special Defense that any promise of payment he may have made is unenforceable under the Statute of Frauds.
II. Issues of Law
 A. Statute of Frauds
The statute of frauds provides that an oral promise made to answer for the debt of another is unenforceable. General Statutes § 52-550 (a)(2). The statute does not apply, however, if the promise is an original undertaking rather than a collateral one. Otto Contracting Co. v. S. Schinella Son, Inc., 179 Conn. 704, 710, 427 A.2d 856 (1980). "Fundamentally the distinction between a contract which falls within the condemnation of the statute of frauds and one which does not is that the former is a collateral undertaking to answer in case of a default CT Page 16420 on the part of the obligor in the contract, upon whom still rests the primary liability to perform, whereas in the latter the obligation assumed is a primary one that the contract shall be performed." Bartolotta v. Calvo, 112 Conn. 385, 389, 152 A. 306 (1930).
 "The test established by our cases is that stated in Bartolotta v. Calvo, [supra, 112 Conn. 391]: `If . . . there is a benefit to the promisor which he did not before, and would not otherwise, enjoy and in addition the act is done upon his request and credit there ordinarily arises an original undertaking not within the statute.' `The question as to whom credit was given, which is determinative of whether the agreement was an original undertaking not within the statute, is one of fact.' Meyers v. Arm, 126 Conn. 579, 583, 13 A.2d 407 (1940); Cordner v. Manevetz, 92 Conn. 587, 590, 103 A. 842 (1918)." Otto Contracting Co. v. S. Schinella Son, Inc., supra, 179 Conn. 711. Consequently, the finding of the trial court is subject only to limited appellate review to determine whether it is clearly erroneous in light of the evidence in the whole record. Stelco Industries, Inc. v. Bette, 2 Conn. App. 17, 21, 475 A.2d 1105 (1984); Otto Contracting Co. v. S. Schinella Son, Inc., supra, 709.
 The trial referee correctly noted, however, that "it is not necessary for an original undertaking to be taken out of the statute of frauds that the promisor receive any benefit from his promise. It is enough that the promise was an inducement for the extension of credit. Equipment Distributors, Inc. v. Adams, 33 Conn. Sup. 528, 531, 358 A.2d 367 (1976). And it need not be the only inducement. Grillo v. Canistraro, 147 Conn. 1, 5, 155 A.2d 919 (1959)."
Kerin Agency, Inc. v. West Haven Painting Decorating, Inc.,38 Conn. App. 329, 331, 332, 333 (1995).
B. Unjust Enrichment
"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the CT Page 16421 plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment".
Herring v. Daniels, 70 Conn. App. 649, 663-664 (2002).
C. Facts
After reviewing the oral testimony and the exhibits, and having evaluated the credibility of the various witnesses, the court finds the following facts:
In January 2000, the defendant owned a 70% interest in Shea Chevrolet, Inc., a Conn. Corporation. The defendant was president of Shea, and the plaintiff was a long time office manager and bookkeeper at Shea Chevrolet. The plaintiff, defendant and his brother, Douglas Shea, vice-president of the company, had a family-like relationship. On or about January 26, 2000, the defendant asked the plaintiff to loan the company $25,000.00 because there was a lack of money to meet payroll and other obligations. On or about January 26, 2000, the plaintiff, during a meeting with the defendant and his brother, delivered to them her check for $25,000., made out to Shea Chevrolet. Although the plaintiff testified that the defendant was guaranteeing repayment of her loan to the company, she also testified, as did Doug Shea, that at the time she gave the check, the defendant told her that as soon as his wife returned from Florida in a week, he would pay her back. The court finds that the plaintiff did not use the word "guarantee" in a legal sense, and that the fair impact of the defendant's words was an acknowledgment that the credit was given to him personally and that his promise to pay the plaintiff back was an inducement for her to loan the money. The plaintiff was well aware that Shea Chevrolet was in dire financial straits in January, 2000, while at the same time she knew that the defendant owned homes in Bristol, CT, Old Lyme, CT, and in Florida. She expected to be paid back by the defendant, and was not looking for payment from a failing business that was in a desperate position.
On or about February 4, 2000, the plaintiff received a partial repayment of $10,000 in the form of a company check, but she delivered a check for $10,000, payable to the company, on or about February 29, 2000, at the defendant's request, in return for his promise to her that he would pay it back. At the time of the loan the defendant promised to pay the plaintiff $300.00 per month in interest, and she received $300.00 cash in each of the months of February, March, April, and May 2000, and the defendant sent her a personal money order for $300.00 in June 2000 and a postal money order for $300.00 in July 2000. CT Page 16422
The business was sold on June 2, 2000. There was no evidence offered as to whether there were any net proceeds from this sale.
D. Conclusions of the Court
1. First Count
Inasmuch as the the plaintiff's promise in January 2000 to pay back to the plaintiff $25,000.00 and then about a month later his promise to pay her the $10,000.00 that she reloaned, were original undertakings. They were therefore not within the Statute of Frauds. See Kerin Agency, Inc.v. West Haven Painting Decorating, Inc., supra.
2. Second Count — Unjust Enrichment
The court concludes that the plaintiff has not met her burden of proof as to her allegations of unjust enrichment.
The court has already found that an enforceable contract exists in this case.
 "Where, however, there is an enforceable express or implied in fact contract that regulates the relations of the party or that part of their relations of the party or that part of their relations about which issues have arisen, there is no room for quasi contract.
Corbin On Contracts, Revised Edition, Volume 1 § 1, 20, pp. 64, 65 (1993). Therefore, the doctrine of unjust enrichment is not applicable in this case.
The court awards the plaintiff $25,000.00. With respect to the plaintiff's claim for statutory interest, which is a claim based on principles of equity, the court, because of the lack of evidence concerning the defendant's ability to pay, concludes that the plaintiff is not entitled to interest under Section 37-3a of the Connecticut General Statutes. Ability to pay is relevant to the question of whether or not the detention of the money is wrongful. The mere fact that the money was owed, doesn't necessarily mean that the detention of it was wrongful, in an equitable sense. The loaned money was used in an effort to benefit the whole company, including the plaintiff.
"Pursuant to General Statues § 37-3a, prejudgment interest is awarded in the discretion of the trial court "to compensate the prevailing party for a delay CT Page 16423 in obtaining money that rightfully belongs to him". Neiditz v. Morton S. Fine Associates, Inc., 199 Conn. 683, 691, 508 A.2d 538 (1986). The detention of the money must be determined to have been wrongful.
Northrop v. Allstate Insurance Co., 247 Conn. 242, 254-255 (1998).
Walsh, J. CT Page 16424